UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RALPH DALZELL, SR., et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
|     vs. | )  CAUSE NO. 1:09-cv-1567-WTL-MJD |
| | ) |
| COUNTRY VIEW FAMILY FARMS, LLC, | ) |
| et al., | ) |
| | ) |
|    Defendants. | ) |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the motion for summary judgment filed by all of remaining Defendants,[1] namely Country View Family Farms, LLC, Donbar Investments, LLC, and Don Leis (hereinafter collectively referred to as "the Defendants"), as to all of the Plaintiffs' claims. The motion is fully briefed and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below.

## I.  STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences

---

[1] Two of the Defendants in this case have been dismissed. One of them is the Clemens Family Corporation, which joined in the instant motion before being dismissed.

in that party's favor.").  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Id.*  Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment."  *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

## II.  FACTUAL BACKGROUND

The following facts are not in dispute for purposes of this motion and are set forth herein to familiarize the reader with the background out of which this case arises.  The particular facts that are at the center of the parties' arguments are discussed in detail in the Discussion section below.

Sky View Farms ("Sky View") is a Concentrated Animal Feeding Operation—what the layperson would refer to as a pig farm—in Randolph County, Indiana.  Defendant Don Leis purchased the land on which Sky View is located ("the Property") in April 2005.  The previous owner had been using the Property to grow corn and bean crops, and Leis continued to do so when he purchased it.  In August 2006, Donbar Investments, LLC, ("Donbar"), of which Leis is a member, became the owner of the Property.  Defendant Country View Family Farms, LLC, ("Country View") leases Sky View's barns from Donbar and operates them.[2]

In 2006, Sky View was approved by the Indiana Department of Environmental Management to be operated as a "2800 head" sow unit, which means it is permitted to house

---

[2]The Court recognizes that the Plaintiffs allege that Leis and/or Donbar have responsibility for some facets of the operation of Sky View's barns.  The Court does not mean to imply that Country View is solely responsible for all aspects of the operation of barns; the distinction is not relevant to the Court's resolution of the instant motion.

2800 sows/gilts, 400 sows and litters, and 400 finish hogs.  Sows were first moved into Sky

View in April 2007.

Each of the Plaintiffs lived in the vicinity of the Property at the time the Sky View began

its operation as a pig farm and each moved in prior to 2005. Since Sky View began operation, the

Plaintiffs have been unable to enjoy their property due to strong noxious odors coming from the

pig farm.

### III.  <u>DISCUSSION</u>

The Plaintiffs allege that the odors emanating from Sky View onto their properties[3]

constitute a nuisance.[4]  Indiana law provides:

> Whatever is:
>
> (1) injurious to health;
>
> (2) indecent;
>
> (3) offensive to the senses; or
>
> (4) an obstruction to the free use of property;
>
> so as essentially to interfere with the comfortable enjoyment of life or property, is
> a nuisance, and the subject of an action.

Ind. Code 32-30-6-6.  However, Indiana law limits the ability to bring a nuisance action against

an agricultural operation.  The Indiana Right to Farm Act ("the Act") provides:

> (d) An agricultural or industrial operation or any of its appurtenances is not and
> does not become a nuisance, private or public, by any changed conditions in the
> vicinity of the locality after the agricultural or industrial operation, as the case

---

[3]The Defendants raise various issues regarding when some of the Plaintiffs owned and/or lived on the various properties that are allegedly affected by odors from Sky View.  In light of the Court's ruling, these issues need not be resolved.

[4]The Plaintiffs originally alleged that Sky View's operations also attracted flies, insects, and coyotes that constituted a nuisance on their properties, but in response to the instant motion they have withdrawn that claim.

may be, has been in operation continuously on the locality for more than one (1) year if the following conditions exist:

> (1) There is no significant change in the type of operation. A significant change in the type of agricultural operation does not include the following:
>
>> (A) The conversion from one type of agricultural operation to another type of agricultural operation.
>>
>> (B) A change in the ownership or size of the agricultural operation.
>>
>> * * *
>>
>> (D) Adoption of new technology by the agricultural operation.
>
> (2) The operation would not have been a nuisance at the time the agricultural or industrial operation began on that locality.

Ind. Code 32-30-6-9(d).  The Defendants assert that the Act bars the Plaintiffs' nuisance action against them.

### A.   Application of the Indiana Right to Farm Act

The Defendants have the burden of demonstrating that the conditions of the Act are satisfied. *Molargik v. West Enterprises, Inc.*, 605 N.E.2d 1197, 1199 (Ind. App. 1993) (holding the Act is an affirmative defense).  The undisputed evidence of record demonstrates that the property on which Sky View is located (hereinafter referred to as "the Property") has been an agricultural operation[5] continuously[6] since at least 2005 when Leis purchased the property and began to grow crops on it.  *See* Leis Supplemental Affidavit at ¶ 7.  The Plaintiffs argue that the

---

[5]"Agricultural operation" is defined as "any facility used for the production of crops, livestock, poultry, livestock products, poultry products, or horticultural products or for growing timber."  Ind. Code 32-30-6-1.

[6]Ind. Code 32-30-6-9 (c) provides:  "For purposes of this section, the continuity of an agricultural or industrial operation shall be considered to have been interrupted when the operation has been discontinued for more than one (1) year."

appropriate question is not when *any* agricultural operation began on the Property, but rather when *the specific* agricultural operation at issue—in this case the pig farm—began. That argument certainly has logical appeal, but it finds no support in the language of the Act. Subsection (d) of the Act refers to "[a]n agricultural . . . operation . . . [that] has been in operation continuously on the locality for more than (1) year."  It then expressly defines a "significant change in the type of operation" as excluding a "conversion from one type of agricultural operation to another type of agricultural operation."  This provision would be rendered meaningless if the Plaintiffs' argument were accepted, because each time the way in which a locality was used was changed "the agricultural operation" would cease to exist and a new agricultural operation would be created; there could never be an agricultural operation that changed from one type of agricultural operation to another.  Rather, the Act must be read to mean that if "an agricultural operation"—in this case, a farm raising crops—exists in a locality[7]—in this case the Property—that "agricultural operation" still exists even if it is changed to another type of agricultural operation—in this case, a pig farm.  Accordingly, the Court concludes that the Defendants have satisfied their burden of demonstrating that the Property has been "an agricultural operation" continuously since at least 2005.

   None of the cases cited by the Plaintiffs compel a different conclusion.  The court in *Lindsey v. DeGroot,* 898 N.E.2d 1251 (Ind. App. 2009), did, as the Plaintiffs represent in their brief, discuss only the length of time the defendants had operated their dairy farm, rather than the total length of time the property had been used for agricultural purposes.  However, the

---

[7]"Locality" is defined as "the specific area of land upon which an agricultural operation . . . is conducted."  Ind. Code 32-30-6-3.

5

distinction was not an issue in the case and was irrelevant to the court's analysis.[8]  In *Stickdorn v. Zook*, 957 N.E.2d 1014 (Ind. App. 2011), the court determined that the Act was inapplicable to the case before it for reasons wholly unrelated to  the length of time the property at issue had been an agricultural operation.  The court in *Wendt v. Kerkhof*, 594 N.E.2d 795 (Ind. App. 1992), held that the Act is a codification of the "coming to the nuisance" doctrine that applies only in cases in which "an agricultural operation has been in existence for more than one year and then someone becomes an adjacent landowner and claims nuisance."  This reading of the Act is entirely reasonable, especially in light of the stated reason behind it:

> (b) The general assembly declares that it is the policy of the state to conserve, protect, and encourage the development and improvement of its agricultural land for the production of food and other agricultural products. *The general assembly finds that when nonagricultural land uses extend into agricultural areas, agricultural operations often become the subject of nuisance suits.* As a result, agricultural operations are sometimes forced to cease operations, and many persons may be discouraged from making investments in farm improvements. It is the purpose of this section to reduce the loss to the state of its agricultural resources by limiting the circumstances under which agricultural operations may be deemed to be a nuisance.

Ind. Code 32-30-6-9(b) (emphasis added).  However, the Plaintiffs do not ask this Court to so read the Act, and Indiana cases have not consistently done so.  *See, e.g., Lindsey*, 898 N.E.2d at 1251.

Next, the Plaintiffs argue that the Defendants have failed to satisfy their burden with regard to the other two conditions for application of the Act.  First, there can have been "no significant change in the type of operation" on the Property.  The Plaintiffs argue that "the Defendants have failed to present any evidence concerning this matter and, instead, only point to a provision in the statute which implies that changing from crops to animals does not constitute a

---

[8]Similarly, in this case it is irrelevant whether and for how long prior to 2005 the Property was a continuous agricultural operation.

significant change."  Plaintiffs' Response at 34.  However, the only allegation in this case is that the Property was converted from a crop farm to a pig farm, and the Defendants are correct that the Act specifically excludes that type of change from the definition of "significant change." It is unclear what additional evidence the Plaintiffs believe the Defendants should have presented on this issue. An affidavit stating that "no significant change has occurred" would be objectionable because it would be a legal conclusion, and it would be impossible for the Defendants to compile a list of all of the possible significant changes that could have occurred on the Property and present evidence that none of them did.  Rather, the Defendants have described what occurred at the Property—the conversion from crop farm to pig farm—and argued (correctly) that the Act does not consider that to be a "significant change."  Without any suggestion that some other "significant change in the type of operation" has occurred on the Property, the Defendants have satisfied their burden with regard to this element.

Finally, the Act requires that "[t]he operation would not have been a nuisance at the time the agricultural . . . operation began on that locality."  Ind. Code 32-30-6-9(d)(2).  The Plaintiffs argue that this provision requires the Defendants to prove that the pig farm was not a nuisance at the time it began operation in April 2007.  Again, the Court disagrees that the Act can be read in this manner. As explained above, the phrase "the agricultural operation" when it is used earlier in subsection (d) must be read as referring to one "agricultural operation" that exists until either a significant change is made or until continuity of operations is broken.  It is a "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Arnett v. C.I.R.*  473 F.3d 790, 798 (7th Cir. 2007) (citations omitted). When the legislature again uses the phrases "the agricultural operation" and "the operation" in subsection (d)(2), they cannot then be read to refer to the agricultural operation as it existed after

a conversion from one type of to another when it so clearly does not have that meaning earlier in the same section.

Indeed, *Laux v. Chopin Land Assocs., Inc.*, 550 N.E.2d 100 (Ind. App. 1990), the case cited by the Plaintiffs in support of their argument on this issue, supports this analysis. The court in *Laux* noted that the Act as it then existed removed the bar to a nuisance suit "where there has been either a significant change in the hours of operation or a significant change in the type of operation."[9] The court then explained:

> Because the language of the statute makes it applicable to any given point in time, the effect of a significant change in either hours of operation or type of operation is to again invoke the statutory conditions and recommence the running of the statutory clock. If then the operation was not an actionable nuisance when the change occurred (i.e., went into effect), it will not become one by virtue of changed conditions in the vicinity which occur more than a year after the operation continuously exists in the changed form.

*Id.* at 102. In this case, however, there has been no "significant change"; therefore there has been nothing to trigger a reset of the statutory clock.

---

[9]The version of the Act in effect in 1990 when *Laux* was decided provided:

> No agricultural or industrial operation or any of its appurtenances shall be or become a nuisance, private or public, by any changed conditions in the vicinity of the locality after the agricultural or industrial operation, as the case may be, has been in operation continuously on the locality for more than one year, provided:
>
> (1) There is no significant change in the hours of operation;
>
> (2) There is no significant change in the type of operation; and
>
> (3) The operation would not have been a nuisance at the time the agricultural industrial operation, as the case may be, began on that locality.

The Act was amended in 2005 to its current form, which expressly excludes "[t]he conversion from one type of agricultural operation to another type of agricultural operation" from the definition of "significant change in the type of operation." Thus while the change from a crop farm to a pig farm was a "significant change" under the Act as it existed in *Laux*, it is not today.

In this case, the Plaintiffs' interrogatory answers establish that the odor problem did not begin until the property became a pig farm; indeed, their complaint is that once the pig farm began operation they were "unable to enjoy the country air that [they] had enjoyed for the past 25 years."  Accordingly, the evidence of record establishes that the Property housed an agricultural operation for many years—and continuously from at least 2005—and that it was not a nuisance until it became a pig farm.  Therefore the Defendants have satisfied their burden as to this final element and have demonstrated that they are entitled to the protection offered by the Act.

## B.  The Negligence Exception to the Right to Farm Act

The Act, which is an exception to Indiana's nuisance law, itself contains an exception:  it "does not apply if a nuisance results from the negligent operation of an agricultural or industrial operation or its appurtenances."  Ind. Code 32-30-6-9(a).  The Plaintiffs have the burden of demonstrating that this exception applies.  *Laux*, 550 N.E.2d at 102.  The Defendants argue that there is no evidence of record which would allow a reasonable jury to conclude that the Plaintiffs have satisfied this burden.  The Court agrees.

There is ample evidence of record which, viewed in the light most favorable to the Plaintiffs, establishes that Sky View is operated in a negligent manner in several respects. Specifically, the Plaintiffs' expert, Dr. Ronald Sheffield, points to the following practices at Sky View that in his view are negligent:

- the management of the mortality composter

- the lack of odor control technology on the ventilation fans of the production barns and the sub-terrain manure storage pit

- poor husbandry and odor control practices that permit the accumulation of feces in pen corners, alley ways, and empty stalls in the breeding/gestation barn

- poor husbandry and odor control practices related to the accumulation and crusting of manure on slatted floors in the gilt barn

- poor husbandry and odor control practice related to the accumulation of manure outside the gilt barn and loading shoot

- spillage and incomplete clean-up of feed in front of the gilt barn and on the underside of the evaporative cooling pad on the northeast corner of the breeding/gestation barn

- spillage of feed by hogs and its incomplete clean-up by workers

- the manner in which Sky View conducted land application of manure prior to 2011; specifically, the failure to use injection or direct incorporation

- land application being conducted right up to neighboring property lines in violation of recognized setbacks

- disrepair of equipment used in 2011 to land apply manure

Sheffield Report, Exh. 19 to Defendants' Brief.  However, it is not enough for the Plaintiffs to prove that some aspects of Sky View's operation are performed negligently; rather, the Plaintiffs must demonstrate that Sky View is a nuisance *because of* that negligence.  In other words, the identified negligence must be the proximate cause of the nuisance.[10]  *See Lindsey*, 898 N.E.2d at 1260 ("The violation of statutory duty is not actionable negligence unless it is also the proximate cause of the injury. The violation of a statute raises no liability for injury to another unless the injury was in some manner the result of such violation. In order to find that an injury was the proximate result of a statutory violation, the injury must have been a foreseeable consequence of

_____

[10]The Court assumes for purposes of this discussion that Sky View is a nuisance vis-à-vis the Plaintiffs.

10

the violation and would not have occurred if the requirements of the statute had been observed.").[11]

"'At a minimum, proximate cause requires that the injury would not have occurred but for the defendant's conduct.'" *Pope v. Hancock County Rural Elec. Membership Corp.*, 937 N.E.2d 1242, 1247 (Ind. App. 2010) (quoting *Paragon Family Rest. v. Bartolini*, 799 N.E.2d 1048, 1054 (Ind. 2003)).   Here, the "defendant's conduct" that is relevant are the negligent practices identified by Dr. Sheffield.  In his report, Dr. Sheffield states that those negligent practices "encouraged the production of odors at the facility that move off-site to nearby properties," created leachate stains that are "known to be highly odorous," "resulted in excessive odors that move off-site to [the Plaintiffs'] properties," "created favorable conditions for odor and fly generation," [led] to excessive ponding . .. and the production of odor and flies that move offsite to nearby property," and "creates odors that will move off-site to [the Plaintiffs'] property."  Throughout his deposition, however, Dr. Sheffield made it clear that he was not able to opine whether Sky View would be a nuisance even if none of the negligent practices he identified existed.  For example, when asked whether he could say "with a reasonable degree of scientific certainty that any of [the] odors associated with leachate at Sky View Farm" moved to the Plaintiffs' properties, he responded "I can say that it leads to conditions that would have created odorous conditions that under the right atmospheric conditions would move off site" and that it would be "impossible to or incredibly improbable to be able to answer the question" of whether it actually did so.  Sheffield Dep. at 182-83.  Similarly, with regard to the compost

---

[11]The Plaintiffs attempt to distinguish *Lindsey* on the ground that it involved the violation of a statutory duty and this case does not.  That distinction is irrelevant.  In *Lindsey* the existence of negligence was established by the fact that a statutory duty was violated; in this case the existence of negligence is established by the failure to act consistently with the applicable standard of care.  Either way, the proximate cause requirement is the same.

building, Dr. Sheffield testified that he could not say with a reasonable degree of scientific certainty that it "caused an objectionable level of odor at any of the plaintiffs' properties"; rather, his answer was "I can say with the visual indications that I observed that the conditions were present enough which may, under the right environmental conditions, led [sic.] to odors that could have been perceived off site." *Id.* at 206. Dr. Sheffield gave essentially the same testimony with regard to the accumulation of feces due to poor husbandry practices, *id.* at 270-71, the accumulation of crusted manure on slatted floors, *id.* at 275, land application methods, *id.* at 356, failure to maintain a setback, *id.* at 370, and, with one exception, with regard to all of the remaining issues identified in his report, *id.* at 452. The exception is the equipment that he found to be in disrepair; with regard to that issue, Dr. Sheffield conceded that he had no evidence that the equipment was in disrepair at the time it was actually used. *Id.* at 373. In conclusion, Dr. Sheffield was asked whether he could "say with a reasonable degree of scientific certainty that plaintiffs would not experience an excessive level of odors at his or her property" if all of the problems he identified were eliminated to his satisfaction. *Id.* at 452. While Dr. Sheffield's answer is not terribly straightforward, drawing all inferences from it in the light most favorable to the Plaintiffs, his answer was that if all of the problems he identified were eliminated and biofilters were installed to treat 60% of the barn exhaust, the odors from Sky View would be reduced such that they would no longer constitute a nuisance vis-à-vis the Plaintiffs. That is of no help to the Plaintiffs, however, because Dr. Sheffield also testified that the failure to install 60% biofilters did not violate acceptable practice at any point in time; in other words, that failure did not constitute negligence. *Id.* at 240-41.

Dr. Sheffield's deposition, both when read as a whole and when dissected and examined question-by-question, fails to provide any evidence from which a reasonable jury could

determine that the negligence of the Defendants caused Sky View to be a nuisance vis-à-vis the Plaintiffs. The Plaintiffs point to various other testimony about the odors coming from Sky View, *see* Plaintiffs' Response at 37-41, but none of that testimony demonstrates that the reason the Plaintiffs experience the odors about which they complain is that Sky View is negligently operated.[12]  As the Indiana Court of Appeals has observed, "pork production generates odors which cannot be prevented." *Shatto v. McNulty*, 509 N.E.2d 897, 900 (Ind. App. 1987). Because they have not pointed to any evidence that the objectionable odors in this case are not simply those that are inherent in the operation of a pig farm, but rather are caused by negligence, the Plaintiffs in this case cannot avoid the operation of the Act and cannot prevail on their nuisance claim. For the same reason, the Plaintiffs also cannot prevail on their claim for negligence. The Defendants are therefore entitled to summary judgment on all of the Plaintiffs' claims.[13]

## IV.  CONCLUSION

For the reasons set forth above, the Defendants' motion for summary judgment is **GRANTED** in its entirety.  Judgment will be entered in favor of the Defendants on all of the Plaintiffs' claims.

---

[12]The Plaintiffs argue that "in cases of nuisance, causation is a matter that is presumed to be within the understanding of an ordinary layperson," Plaintiffs' Response at 41, and cite to cases in which a finding of nuisance has been based upon the plaintiffs' testimony. The Plaintiffs are certainly correct that their testimony could support a finding that the odors they are experiencing satisfy the definition of a nuisance and come from Sky View (assuming, of course, that there is not another pig farm in the vicinity that could be the source of the odors). The problem is that neither the Plaintiffs nor their expert are able to say that Sky View would not be a nuisance *but for* the (alleged) fact that it is negligently operated, and the Plaintiffs have pointed to no other evidence from which a reasonable jury could so conclude.

[13]In light of this ruling, the Court need not address the remainder of the Defendants' arguments.

SO ORDERED:  09/13/2012

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification